.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIBIZHEV YEVHENII<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, U.S. SECRETARY OF HOMELAND SECURITY,<br><br>Respondent. | Case No.: 3:26–cv–02228–JES–MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Dibizhev Yevhenii's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1, ("Pet"). Pursuant to the Court's Order to Show Cause (ECF No. 2.), Respondents (the "Government") filed the Return to the Petition. ECF No. 4, ("Ret."). Petitioner filed a Response in Opposition. ECF No. 5, ("Opp'n.). The Court then took the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

Petitioner is a native and citizen of Ukraine. Ret. at 2. On July 26, 2025, Petitioner applied for admission into the United States at the San Ysidro Port of Entry. Pet. ¶ 6; Ret. at 2. He did not possess valid immigration documentation and was deemed inadmissible, under 8 U.S.C. § 1182(a)(7)(A)(i)(I), placed into expedited removal proceedings, and taken into Immigration and Customs Enforcement ("ICE") custody. Ret. at 2.

While in custody, Petitioner filed an asylum claim and, on October 6, 2025, he received a negative credible fear determination. Pet. at 13–14. Upon Petitioner's request, on October 14, 2025, an Immigration Judge ("IJ") reviewed the asylum officer's decision and vacated the negative credible fear determination. Pet. at 15–16, 21–22. Following the IJ's decision, Petitioner was placed into removal proceedings under 8 U.S.C. § 1229(a). Ret. at 2. Since October 2025, Petitioner's filed multiple unsuccessful parole requests with ICE. Pet. at 6. On March 13, 2026, an IJ denied Petitioner's motion for a bond hearing, concluding that he was subject to mandatory detention, under Section 1225(b)(2)(A). *Id*. at 24–25.

On February 18, 2026, Petitioner's Application for Temporary Protected Status ("TPS") for Ukraine was approved. Opp'n. ¶ 3; Pet. at 11. TPS prevents Petitioner from being removed from the United States during a specified period. *See* Pet. at 11. Here, Petitioner's Notice of Action states that his TPS is active from February 18, 2026, through October 19, 2026. *Id*. ¶ 3; *id*. at 11. In light of the TPS approval, Petitioner filed a Motion to Convert his Individual Hearing to a Master Calendar Hearing, which is scheduled for May 1, 2026. *Id*. ¶ 4; *see id*. at 11.

Petitioner has been held continuously for the last nine months at the Otay Mesa Detention Center ("OMDC"). *Id*. at 6; *see* ECF No. 4–1 at 2–4. As a result, Petitioner filed this action, seeking habeas relief from the Court.

//

//

//

3:26-cv-02228-JES-MMP

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration–related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## III.    DISCUSSION

Petitioner alleges that the Government subjecting him to continued detention, without an individualized bond determination hearing, violates the Administrative Procedure Act and Due Process Clause of the Fifth Amendment. Pet. at 6–7. Accordingly, he requests that the Court orders such a hearing for him before an IJ, or alternatively, orders his immediate release. *Id.* at 7. In the Government's Return, it raises the following arguments: (1) the Court lacks jurisdiction over Petitioner's claim; (2) Petitioner is lawfully detained under Section 1225; (3) Petitioner's detention has not become unconstitutionally prolonged as to violate due process; and (4) if the Court finds Petitioner to be entitled to

relief, a bond hearing before an IJ is the proper remedy. Ret. at 3–10. The Court addresses each in turn.

The Court recently addressed these issues in *Sandesh v. LaRose* and applied the same framework in an analogous case, *Yue v. Noem*, No. 26–cv–1328–JES–SBC, 2026 WL 933975, at * 1–4 (S.D. Cal. Apr. 6, 2026). *Sandesh*, No. 26–CV–0846–JES–DDL, 2026 WL 622690, at *1–6 (S.D. Cal. Mar. 5, 2026). The Court elects to follow that same rationale here and incorporates it by reference.

**A.   Jurisdiction**

The Government avers that the Court lacks jurisdiction because Petitioner does not name his immediate custodian, OMDC's warden, as a Respondent. Ret. at 3. The Government is correct that habeas petitions generally require the petitioner to name the person who has custody over him. 28 U.S.C. § 2242 ("It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."); *see Doe v. Garland*, 109 F. 4th 1188, 1197 (9th Cir. 2024) ("[C]ore habeas petitioners challenging their present physical confinement [must] name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition.").

However, other district courts have acknowledged this technical defect, but chose not to dismiss the petition, particularly where a *pro se* litigant is involved. *See Herrera-Ramirez v. United States*, No. 2:25-CV-01749-MMD-EJY, 2025 WL 3239043 (D. Nev. Nov. 19, 2025). The Court also notes that some courts have even transferred petitions that were filed in the wrong district and did not name the warden, because dismissing such cases, would delay and unduly burden petitioners. *See e.g., Singh v. Field Off. Dir., San Francisco Field Off., United States Immigr. & Customs Enf't*, No. 24-CV-03472-RMI, 2024 WL 4454824, at *1 (N.D. Cal. Sept. 9, 2024).

Considering Petitioner's *pro se* status, the liberty interest at issue, supportive in-circuit case law, and the Government's appearance and response in this action, the Court finds that this technical deficiency does not deprive it of jurisdiction. *See Devilmar v. U.S.*

3:26-cv-02228-JES-MMP

*Immigr. & Customs Enf't ICE,* No. 3:26-CV-0009-JES-MSB, 2026 WL 130387, at *1 (S.D. Cal. Jan. 16, 2026) (finding jurisdiction over habeas case where petitioner failed to name warden as a respondent). Moreover, the Court finds that Section 1252's jurisdiction stripping provisions do not bar consideration of this Petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Accordingly, the Court has jurisdiction to hear this Petition. *See Martinez Lopez v. Noem*, No. 25–cv–2717–JES–AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025).

### B.    Petitioner Is Properly Detained Under Section 1225(b)

The Court agrees with Respondents. Petitioner was an arriving alien, who was apprehended at the San Ysidro Port of Entry, without valid immigration documents. Ret. at 2. He was originally placed into expedited removal proceedings but later transferred to full removal proceedings, after an IJ vacated his negative credible fear determination. *Id.* The Court, therefore, finds that Petitioner is appropriately detained under 8 U.S.C. § 1225(b). *See Jennings*, 583 U.S. at 287; *see also Sandesh*, 2026 WL 622690, at *2.

### C.    The *Banda* Factors Weigh in Favor of Ordering a Bond Hearing

This Court, along with numerous others within this Circuit, has found that prolonged mandatory detention will, at some point, raise due process considerations. *Sandesh*, 2026 WL 622690, at *2–3. To determine whether a noncitizen's prolonged detention under Section 1225 is unconstitutional, courts consider the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). The Court now turns to apply this test.

//

//

3:26-cv-02228-JES-MMP

### (1) Length of Detention

The first *Banda* factor, total length of detention, is "the most important factor." *Id.* "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" *Amado v. United States Dep't of Just.*, No. 25–CV2687–LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi v. LaRose*, No. 25–CV–2587–RSH–BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (finding that although "almost 12 months" detention was not dispositive, factor does weigh in favor of petitioner); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25–CV–00815–SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period ... qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18–cv–05321–JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted).

Here, Petitioner has been continuously detained since July 26, 2025, thus, his detention has spanned nine months. Ret. at 1. While this period is not as prolonged as some of the cases cited above, it still falls squarely within the range where courts have found to weigh in favor of petitioners. Accordingly, the Court finds that the first *Banda* factor weighs in favor of granting a bond hearing.

### (2) Likely Duration of Future Detention

The second *Banda* factor considers the "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. "The usual removal process involves an evidentiary hearing before an immigration judge," followed by potential Board of Immigration Appeals ("BIA") and Ninth Circuit //

3:26-cv-02228-JES-MMP

review, a process that can take two or more years. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020); *Banda*, 385 F. Supp. 3d at 1119.

Due to his recently approved TPS, Petitioner's counsel has moved to convert the scheduled Individual Hearing to a Master Calendar Hearing. Opp'n ¶¶ 3–4. Petitioner's counsel represents that such activity will likely prevent his removal proceedings from concluding on May 1, 2026. *Id*. Assuming this to be true, it is likely that Petitioner will, therefore, remain detained for an extended additional period. Beyond that, should Petitioner ultimately receive an adverse ruling, it is reasonable to presume that he will file appeals to the BIA and the Ninth Circuit, which would extend his detention significantly longer. *See Banda*, 385 F. Supp. 3d at 1119–20. Thus, this factor weighs in favor of Petitioner.

### (3) Conditions of Detention

"The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id*. at 1119 (citation omitted). The Government does not address OMDC's detention conditions in its Return. *See generally* Ret. But there is no dispute that Petitioner has been held at OMDC for several months. *Id*. at 2. Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado*, 2025 WL 3079052, at \*6. Considering OMDC's conditions, that resemble penal confinement, Petitioner's argument that he is entitled to a bond hearing is very strong. *See Banda*, 385 F. Supp. 3d at 1119; *see also Kydyrali*, 499 F. Supp. 3d at 773. Accordingly, this factor weighs heavily in Petitioner's favor.

### (4) Delays Caused by the Detainee; and (5) by the Government

The fourth and fifth *Banda* factors examine delays attributable to the petitioner and the Government, respectively. *Banda*, 385 F. Supp. 3d at 1119–20. The record does not reflect any delays attributable to either party. *See generally* Pet.; Ret. at 7. Accordingly, both factors are neutral.

//

7

**(6) Likelihood of a Final Order of Removal**

The sixth *Banda* factor looks to whether the noncitizen has asserted any defenses to removal. *Banda*, 385 F. Supp. 3d at 1120. Petitioner has filed for asylum, withholding of removal, and relief under the Convention Against Torture. Pet. ¶ 13. He has also been granted TPS through October 19, 2026. Pet. at 11. Despite such action, the Court is in no position to assess the merits of his claim for relief, at this stage. This factor is, therefore, neutral.

In sum, three *Banda* factors weigh in favor of Petitioner, with the remainder being neutral. Under these circumstances, the Court finds that Petitioner's detention has become unreasonable and due process requires that he is afforded an individualized bond hearing. *See Sandesh*, 2026 WL 622690, at *2–3; *see also Banda*, 385 F. Supp. 3d at 1117–20.

**D.    Due Process Requirements for a § 1225(b) Bond Hearing**

The Court has previously held—and does so again, here—that the proper standard at a bond hearing ordered after a prolonged detention that is found to violate the Fifth Amendment requires the Government to show, by clear and convincing evidence, that the detainee is a flight risk or poses a danger to the community. *See Sandesh*, 2026 WL 622690, at *2-3; *Singh v. Holder*, 638 F. 3d 1196, 1200, 1203, 1208 (9th Cir. 2011).

It is imperative that the legal standard set forth in *Singh* is applied by the IJ to properly effectuate this Court's Order for a constitutionally sufficient bond hearing. Doing so protects petitioners' critical liberty interests and the due process rights of such individuals. *See, e.g., Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025); *Gao*, 805 F. Supp. 3d at 1112.

//
//
//
//
//

8

3:26-cv-02228-JES-MMP

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** the following:

(1)    The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order.

    a. At the hearing, the Government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if he were to be released.

    b. Respondents **SHALL** make a complete record of the bond hearing available to Petitioner and his counsel.

(2)    Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

(3)    The Clerk of Court is **DIRECTED** to **CLOSE** this case

**IT IS SO ORDERED.**

Dated: April 30, 2026

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-02228-JES-MMP